IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GEORGE MARTIN and MARTIN CUSTOM HOMES, L.L.C., | Case No. CV 08-470-S-CWD |
| Plaintiffs, | |
| v. | **ORDER** |
| ED SMITH and CAMAS COUNTY, IDAHO, by and through the duly elected Board of Commissioners in their official capacity, KEN BACKSTROM, BILL DAVIS, and RON CHAPMAN, | |
| Defendants. | |

The Court has before it Defendants' Motions for Summary Judgment (Docket Nos. 17, 19). Having carefully reviewed the briefing submitted by the parties and the record, as well as holding oral argument on the motions on July 15, 2009, the Court finds, for the following reasons, that Defendants Motions for Summary Judgment will be granted.

## I. Introduction

Plaintiff George Martin owns or has contractual rights in certain parcels of property located in Camas County, Idaho. Beginning in 2005, Camas County began a comprehensive planning and zoning process to address the growth in Camas County. (Defendants Statement of Material Facts 2, Docket No. 17-3.) Defendants held, and Plaintiff participated, in several public

hearings and workshops to address changes to the comprehensive plan and zoning ordinance for Camas County. The 2006-2007 Comprehensive Plan including Land Use Map was adopted via Resolution 96 on May 25, 2006; however, this plan did not include the northern portion of the County. Thus, the Board adopted the Plan as it applies to the northern portion of the County via Resolution 103 on March 29, 2007 (hereinafter collectively "Comprehensive Plan"). During this period, Defendants allege they had to adopt several legal moratoriums to allow the County time to conduct the comprehensive planning and zoning process.

The Commission also conducted public hearings with regard to the Zoning Ordinance and Map ultimately adopting the Zoning Ordinance (Ordinance 153) and Zoning Map (Ordinance 150) which applied to Camas County in its entirety on April 18, 2007. One day prior to the adoption of Ordinance 153, Plaintiff filed an application to rezone his two eighty acre parcels to Residential R-7 (or seven units per acre) pursuant to Zoning Ordinance 12 and Resolution 96. The Planning and Zoning Commission held a public hearing with regard to Plaintiff's application for rezoning and deliberated in November and December of 2007, setting a public hearing on the application before the Board of Commissioners for January 22, 2008. (Butlin Aff. at p 27, Docket No. 18-3.)

On May 4, 2007, Plaintiff filed an action in the Fifth Judicial District against the County seeking the permanent injunction of Ordinances 150 and 153, as well as Resolution Nos. 96 and 103. Further, Plaintiff sought and was granted a preliminary injunction on December 28, 2007, precluding the County from processing any land use applications filed pursuant to the zoning ordinance as amended in 2007. On January 22, 2008, the Plaintiff filed a motion to hold Defendants in contempt for attempting to process his application. On March 7, 2008, the state

court issued an order denying Plaintiff's motion for contempt and expanding the court's previous preliminary injunction order to include Ordinances 12, 150, and 153. After this order was entered, the County adopted Ordinance 155, a legal moratorium on all land use applications.

During proceedings in the state court action, Plaintiffs were granted leave to amend their state court complaint to add federal claims. Plaintiffs were not granted leave to add additional claims relating to the 2008 comprehensive planning and zoning ordinances, but Plaintiffs filed another action in state court regarding those claims which has been dismissed on the basis of a lack of standing.

After amending the Complaint to allege due process and equal protection violations under 42 U.S.C. § 1983, Defendants removed the first action to this Court. The Court remanded Count III to state court (Docket No. 32) on March 17, 2009. Defendants also filed two motions for summary judgment on Count II of Plaintiffs' Complaint alleging tortious interference with contract against Defendant Ed Smith (Docket No. 17) and Counts V and VI of Plaintiffs Complaint alleging due process and equal protection violations (Docket No. 19). These motions are addressed herein.

## II. Discussion

### A. Effect of State Court Decisions

As a preliminary matter, the Plaintiffs claim that all orders regarding the litigation between the parties entered by the Fifth Judicial District of the State of Idaho in Case No. CV 07-24 are binding and controlling precedent on issues pending before this Court in this action. (Response p. 3, Docket No. 34.) Plaintiff argues that the state court rulings are the "law of the

case" and that Defendants are collaterally estopped from re-litigating the facts and issues determined by the state court.

In determining the preclusive effect of the state court rulings under the doctrine of res judicata, the relevant test is whether the state court decisions meets the state's own criteria necessary to require a court of that state to give preclusive effect to the decision. *Kay v. City of Rancho Palos Verdes*, 504 F.3d 803 (9th Cir. 2007). Further, the party seeking to assert collateral estoppel bears the burden of proof and introduction of a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action. Any reasonable doubt as to what was decided by a prior judgment should be resolved against allowing collateral estoppel effect.

Under Idaho law, the doctrine of collateral estoppel prevents relitigation of an issue previously determined when: (1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case; (2) the issue decided in the prior litigation was identical to the issue presented in the present action; (3) the issue sought to be precluded was actually decided in the prior litigation; (4) there was final judgment on the merits in the prior litigation;[1] and (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation. *Stoddard v. Hagadone Corp*., 147 Idaho 186 (2009).

Plaintiff does not discuss any of these elements of the doctrine of collateral estoppel in detail. However, Defendants argue that the issues of absolute and qualified immunity, as well as personal liability for due process and equal protection violations, were not addressed in either of

---

[1] The judgment issued by the state discrict court is final even if it is on appeal. The Restatement states: "[t]he better view is that a judgment otherwise final remains so despite the taking of an appeal unless what is called an appeal actually consists of a trial de novo..." Rest. 2d. Judgments 13.

the state court actions. The Court agrees. Therefore, this Court is not bound by the decisions of the state court. This conclusion is bolstered by the fact that, in two different lawsuits concerning the same subject matter, the two state court judges have reached differing conclusions. Thus, it is unclear which version of the facts and law would need to be adopted by the Court under the collateral estoppel doctrine.

Plaintiffs also argue that the law of the case doctrine should apply. The law of the case doctrine provides that "[a] court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in an identical case." *U.S. v. Cuddy*, 147 F.3d 1111 (9th Cir. 1998). In *United States v. Scrivner*, cited by Defendants, the Ninth Circuit noted that the court may depart from the law of the case only in certain circumstances: 1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result. *United States v. Scrivner*, 189 F.3d 825 (9th Cir. 1999). If one of these circumstances does not exist, failure to apply the law of the case is an abuse of discretion. *Id*. In the instant case, the Court finds that the law of the case doctrine does not apply because the prior decisions were not issued by the same court or a higher court. Further, as noted above, the issues before the Court are not identical to those before the state courts.

The Court finds that neither the doctrine of collateral estoppel nor the law of the case doctrine apply. Further, the Court finds that, since the causes of action and issues before the Court differ significantly than those before the state courts, the Court does not need to take judicial notice of the entirety of the state court records at this time, as requested by Plaintiffs during the hearing on July 15, 2009.

**B. Plaintiff's Objections to Defendants' Affidavits**

As part of Plaintiffs' Response to Defendants Motions for Summary Judgment, objections were noted to the Affidavits of Dwight Butlin and Ken Backstrom as well as the Defendants' statement of material facts (Docket No. 34-2). The objections were not made by way of a motion to strike and Defendants filed no response to the objections.

Fed. R. Civ. P. 56(e)(1) states: "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."

Plaintiffs cite many objections to both the Butlin and Backstrom Affidavits (Docket Nos. 18-3, 18-4.) These objections are only partially specific to the paragraphs in the affidavits and include several general objections that Plaintiff makes to large groupings of paragraphs including objections regarding hearsay, legal conclusions, speculation, lack of knowledge, and that the testimony was contrary to the Findings of Fact entered by the state court in the first action.

The Court will not address each of Plaintiffs' objections, as the Court has only relied upon information in the Affidavits it found met the requirements under Fed. R. Civ. P. 56(e)(1) and that was substantiated by exhibits and other evidence provided in the record.

**C. Motions for Summary Judgment**

**1. Legal Standard**

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure, which provides, in pertinent part, that judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine

issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

A moving party must show that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets the requirement of Rule 56 by either showing that no genuine issue of material fact remains or that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). It is not enough for the [non-moving] party to "rest on mere allegations or denials of his pleadings." *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

In determining whether a genuine issue of material fact exists, facts and inferences must be viewed most favorably to the non-moving party. To deny the motion, the Court need only conclude that a result other than that proposed by the moving party is possible under the facts and applicable law. *Aronsen v. Crown Zellerbach,* 662 F.2d 584, 591 (9th Cir. 1981).

The Ninth Circuit has emphasized that summary judgment may not be avoided merely because there is some purported factual dispute, but only when there is a "genuine issue of material fact." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 500 (9th Cir. 1992). The Ninth Circuit has found that, to resist a motion for summary judgment,

> the non-moving party: (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and

> (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*British Motor Car Distrib. Ltd. v. San Francisco Automotive Indus. Welfare Fund*, 882 F.2d 371, 374 (9th Cir. 1989).

**2. Defendants' Motion for Summary Judgment on Plaintiffs' Tortious interference with Contract Claim**

Defendants have moved to dismiss Count II of the Complaint for Tortious Interference with Contract against the County Defendants, including Ed Smith in his official capacity, arguing that Plaintiffs failed to serve the County Defendants with a notice of tort claim as required by the Idaho Tort Claims Act ("ITCA"), I.C. §6-906. (Docket No. 17.) During the hearing on the motions, Plaintiffs' counsel conceded that Count II was filed against Ed Smith only in his capacity as Plaintiffs' realtor - not in his official capacity as a County Commissioner. Further, Plaintiffs conceded that Count II was not alleged against any other County Defendants. Therefore, the Court finds that the Motion for Summary Judgment on Count II (Docket No. 17) should be granted and Count II will be dismissed to the extent the claims in that Count are alleged against the County and Defendant Ed Smith, insofar as he was acting within his official capacity as a Commissioner.

**3. Defendants' Motion for Summary Judgment on Plaintiff's Civil Rights Claims**

During trial on Count III in the state court complaint, Plaintiffs were allowed to amend their complaint to include federal civil rights claims under 28 U.S.C. § 1983, including claims for due process and equal protection violations. After removing Plaintiffs' Complaint to this Court, Defendants filed a Motion for Summary Judgment (Docket No. 19) on the federal claims.

The basis of Plaintiffs' federal claims follows. In Count V, Plaintiffs allege that Defendants violated his substantive and procedural due process rights. Specifically, Plaintiffs allege that the County, in amending the Camas County Comprehensive Plan and enacting a new Zoning Ordinance and Zoning Map in 2006 and 2007, uniformly and systematically upzoned the real property owned by various members, relations and clients of members of the Board of Commissioners, and downzoned real property owned by Plaintiffs. Further Plaintiffs contend Defendants' delay in processing his application for rezoning violated his due process rights.

In Count VI of Plaintiffs' Complaint he alleges Plaintiffs were denied equal protection of the law when Defendants' adopted a series of legal moratoriums specifically directed at prohibiting the development of Plaintiff's property, while not affecting similarly situation properties.

Defendants argue that summary judgment on Counts V and VI is appropriate for several reasons: 1) the County Defendants are entitled to absolute immunity for their legislative actions; 2) if they are not entitled to absolute immunity they are entitled to qualified immunity; 3) Plaintiff does not have standing as he has suffered no palpable injury; and 4) even if none of the above apply, the Defendants' actions were rationally related to legitimate governmental interests. As explained in more detail below, the Court finds that absolute and qualified immunity apply and summary judgment will be granted.

**a. Absolute Immunity**

Defendants argue that, to the extent Plaintiffs claims they were denied federal due process or equal protection based on the legislative enactment of the Comprehensive Plan, the Zoning

Ordinance and Map, and the various legal moratoriums, the County and its individual board members have absolute immunity.[2]

It is settled law that federal, state, regional, and local legislators are entitled to absolute immunity from liability under 42 U.S.C. §1983 for their legislative activities. *Chappell v. Robbins*, 73 F.3d 918, (9th Cir. 1996) (internal citations omitted.) This immunity extends to those actions falling within "the sphere of legitimate legislative activity" and to claims for monetary, declaratory, and injunctive relief. *Id. citing Tenney v. Brandhove*, 341 U.S. 367, 376 (1951); *Supreme Court of Virginia v. Consumers Union of the United States*, 446 U.S. 719, 732 (1980). The Ninth Circuit considers two primary factors in determining whether a particular actions is legislative: 1) does the act involve ad hoc decision making or the formulation of policy; and 2) does the act apply to a few individuals or the public at large? *Id. at* 920-921 (*internal citations omitted.*) The Ninth Circuit has noted that, "[w]hile the question is necessarily one of degree, the more an action involves policymaking and applies to the entire community, the more likely it is to be classified legislative." *Id.* at 921. Whether an act is legislative turns on the nature of the act, rather than on the motive or the intent of the official performing it. *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998). Thus, when examining whether an act is legislative, it must be stripped of all considerations of intent and motive. *Id.*

Defendants argue that enactment of the Comprehensive Plan and the Zoning Ordinance and Map are legislative actions. The Court agrees. Both Idaho law and Ninth Circuit law have found that the enactment of general zoning plans and ordinances are considered to be legislative

---

[2] In Defendants' original brief, they indicated they also believed absolute immunity applied to processing the rezoning application as well; however, at the hearing, both parties appeared to agree that the processing of the land use application was not a legislative act that would qualify for absolute immunity. Thus, the Court will not address it here.

acts. *Zamsky v. Hansell*, 933 F.2d 677 (9th Cir. 1990) *citing Cinevision Corp v. City of Burbank*, 745 F.2d 560, 580 (9th Cir. 1984); *Cooper v. Ada County Comm'rs*, 101 Idaho 407 (1980) ("It is beyond dispute that the promulgation or enactment of general zoning plans and ordinances is legislative action").

Plaintiffs contend this conclusion is incorrect, arguing that the "Ninth Circuit has ruled squarely against Defendants' argument that the individual members of the Board of Commissioners, and or Camas County, are absolutely immune from liability from their unconstitutional acts." (Response p. 4, Docket No. 34. ) In support of this argument, Plaintiffs cite to *Zamsky*; however, *Zamsky* is only partially applicable to the situation presented to the Court.

In *Zamsky*, the Ninth Circuit was dealing with actions by the Land Conservation and Development Commission (LCDC), an Oregon administrative agency that was not vested with legislative authority. With that background in mind, the Ninth Circuit reversed the district court's holding that the director was absolutely immune from suit, finding that the LCDC's function in monitoring plaintiff's compliance with already existing laws and regulations was executive in nature, as opposed to legislative. In making this determination, the Ninth Circuit noted that, while the LCDC had legislative functions, such as "passing the goals which become the state-wide master zoning plan," the plaintiff did not sue on the basis of such legislative acts. Instead, the Plaintiff sued the LCDC on the basis of an executive act, "suggesting or demanding changes to local plans," as opposed to voting and passing changes to the local plans.

The Court agrees with Plaintiffs to the extent that *Zamsky* can be read to preclude absolute immunity protection to the Defendants' actions in connection with the processing of Plaintiffs' rezoning application. Similarly to the contested monitoring action in *Zamsky*, the County

Defendants' actions in connection with processing Plaintiffs' application may be classified as executive or quasi-judicial actions; however, with respect to the actual enactment of the Comprehensive Plan, Zoning Ordinance and Map, that included the majority if not all of the land in the County, *Zamsky* stands for the proposition that those actions were legislative.

Further, Plaintiffs argue that the Comprehensive Plan and the Zoning Ordinance and Map do not meet the test articulated by the Ninth Circuit for legislative activity because they affect the property of only a few individuals. Based on the state court decision and Plaintiff Martin's Affidavit (Docket No. 34-4), Plaintiffs' assertion is inaccurate. The Comprehensive Plan and Zoning Ordinance and Map applied to the entire County and even Plaintiff Martin's Affidavit confirms that at least 20,000 acres of property were rezoned as a result of this process. (Martin Aff. at ¶16, Docket No. 34-4.) Thus, it is clear that the enacted plan and ordinances applied to more than a few individual landowners.

With respect to the legal moratoriums enacted as Ordinances 130, 136, 143, 148, and 151 (Exh. S, Docket No. 17-22), the Court finds these actions were legislative in character, as they meet the Ninth Circuit's test. The Ninth Circuit also has specifically concluded that emergency ordinances stopping a plaintiff's permit applications are legislative. *Kuzinich v. County of Santa Clara*, 689 F.2d 1345, 1348 (9th Cir. 1982.) This conclusion was found to be correct, even where the ordinance had an immediate practical effect on only two parcels held by the same owner but, by its terms, applied to all parcels within the covered area. *Kaahumanu v. County of Maui*, 315 F.3d 1215, 1220 (9th Cir. 2003). The instant case is comparable. Here, the legal moratoriums were passed as Ordinances, voted on by the County Commissioners, and on their face applied to all persons either county wide or within the specified areas.

Plaintiffs argue the moratoriums, because they arguably were enacted based only on malice towards him, were not legislative. However, the law is clear, as discussed above, that the intent of the legislators is irrelevant when determining whether the action was legislative in nature. *See Bogan v. Scott-Harris*, 523 U.S. at 55. Additionally, even if the legal moratoriums affected Plaintiff more than other property owners in Camas County as he alleges, the language on the face of the moratoriums indicates the policy reasons behind their implementation and their equal application to all citizens.[3] Thus, the Court finds that the Ninth Circuit test for legislative activity is met based on the undisputed facts that the legal moratoriums were voted upon, policy based, and equally applicable to all those seeking to do what the legal moratoriums temporarily prohibited.

Plaintiffs further argue that, because the Defendants' acts were found by the state court to violate proper legislative procedures, the legislative action was not legitimate and absolute immunity does not apply. (Response ¶7, Docket No. 34 *citing County Concrete Corp v. Town of Roxbury*, 442 F.3d 159 (3d Cir. 2006).) Specifically, Plaintiffs argue that, because the state court has already found that Defendants failed to maintain a reviewable record, failed to provide adequate legal notice of public hearing, failed to perform the proper substantive analysis under LLUPA, and acted with illegal conflicts of interest, these deficiencies in the legislative process defeat the second prong of the test set forth in *County Concrete.* To support this conclusion, Plaintiffs cite a case from the Court of Appeals for the Third Circuit, holding that established

[3] Several of the moratoriums prohibit further issuance of development permits pending completion of the comprehensive plan. (Exh. S at Ordinances Nos. 130, 136, Docket 17-22.) Ordinances No. 143 and 148 preclude processing applications for rezoning to land use zones not included in the new comprehensive plan. (Exh. S at Ordinance 143, Docket No. 17-22). Finally, Ordinance 151 prohibits the filing of any subdivision in the impact area of the City of Fairfield. (Exh. S at Ordinance 151, Docket No. 17-22).

legislative procedures require constitutionally accepted procedures of enacting legislation to ensure that the legislation is a legitimate, reasoned decision representing the will of the people which the governing body has been chosen to serve. *Ryan v. Burlington County, New Jersey, et al.*, 889 F.2d 1286, 1291 (3d Cir. 1989.)

However, the Third Circuit clarified its decision in *Ryan* in *Acierno v. Cloutier*, holding that there is an important distinction between general adherence to legislative procedure for the purposes of taking legislative action as a matter of federal law, as opposed to full compliance with all technical requirements for such legislative action to be valid under state or county law. *Acierno v. Cloutier*, 40 F.3d 597 (3d Cir. 1994). Thus, the Third Circuit concluded that the municipal body needed only to establish that it was acting pursuant to the basic legislative procedures - in that case, published notice, a public hearing, and the adopted ordinance enacted by a vote at a public hearing. *Id.* at. 614. Here, in enacting the Comprehensive Plan and Zoning Ordinance and Map, these "basic" legislative procedures, even if defective, also were followed. Thus, the Court concludes that, even if the Third Circuit test applies, the procedural prong is met by the undisputed facts in this case.[4]

With respect to the legal moratoriums, the Court notes that Plaintiffs only argument that they were procedurally defective is that the County, under the Plaintiffs' reading of I.C. §67-6523, enacted too many moratoriums in too short of a time period. As noted above, even under the Third Circuit's test, compliance with state mandated procedures is not required for an action to be considered procedurally legislative. Thus, as the Plaintiffs' have no other complaint with

---

[4] In other words, if Defendants' must procedurally establish that their legislative actions were "legitimate," they have done so for the purposes of absolute immunity under federal law.

respect to the legal moratoriums, the Court concludes that the moratoriums were procedurally sound under the Third Circuit's test.

In contrast, the Ninth Circuit has not adopted the same standard and has not clearly defined what it meant by "sphere of legitimate legislative activity." The Ninth Circuit has, however, held that legislative immunity hinges on the character of the action that is taken. *Chappell v. Robbins*, 73 F.3d 918 at 921 (9th Cir. 1996). Thus, as the Court has found that the character of the action taken by the Board of Commissioners in enacting the Comprehensive Plan and Zoning Ordinances and Map and the adoption of the legal moratoriums was legislative in character, the Ninth Circuit's test for absolute legislative immunity is met and the Motion for Summary Judgment with respect to the Plaintiff's civil rights claims arising out of the County Commissioner's enactment of the Comprehensive Plan, Zoning Ordinance and Zoning Map, and legal moratoriums, will be granted.

**b. Qualified Immunity**

Defendants further assert that, if absolute immunity does not apply, qualified immunity shields government officials performing discretionary conduct as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. As the only County action remaining at issue is the alleged delay in the processing of Plaintiffs' application, that is the only issue that will be addressed in this discussion of Defendants' motion.

"Qualified immunity serves to shield government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 971 (9th Cir. 2005) *quoting Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982). Typically, the court applies the following two pronged test to resolve all qualified immunity claims. First, the court must "consider the materials submitted in support of, and in opposition to, summary judgment, in order to decide whether a constitutional right would be violated if all facts are viewed in favor of the party opposing summary judgment. *Squaw Valley Development Co v. Goldberg*, 375 F.3d 936, 942 (9th Cir. 2004) *revd on other grounds, citing Jeffers v. Gomez*, 267 F.3d 895, 909 (9th Cir. 2001). If no constitutional violation is found, the inquiry ends. *Id. citing Cunningham v. City of Wenatchee,* 345 F.2d 802, 810 (9th Cir. 2003). On the other hand, if the parties' submissions create a triable issue of whether a constitutional violation has occurred, the second determination the court must make is whether the right was clearly established. *Id. citing Saucier v. Katz*, 533 U.S. 194, 201 (2001).

A right is clearly established when it would be clear to reasonable government officials that their conduct was unlawful in the situation confronting them. *Squaw Valley Development Co v. Goldberg*, 375 F.3d at 942. Thus, the court should consider the state of the law at the time of the alleged violation and whether a reasonable official in a particular factual situation should have been on notice that their conduct was illegal. *Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007). The subjective beliefs of the actual officials are irrelevant. *Id*. Additionally, "[q]ualified immunity shields only actions taken pursuant to discretionary functions," and does not protect "non discretionary or ministerial duties." *F.E. Trotter, Inc. v. Watkins,* 869 F.2de 1312, 1314 (9th Cir. 1989). Generally, ministerial, non-discretionary functions are those that lend themselves readily to formulaic determination, while discretionary functions are those that require particularized judgments. *Id*.

To demonstrate a substantive due process claim, a plaintiff must show that a government official deprived him or her of a constitutionally protected life, liberty, or property interest. *Nunez*

*v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998). Land use regulations may be the subject of substantive due process claims, so long as the regulation serves no legitimate governmental purpose.[5] *Lingle v. Chevron USA Inc.*, 544 U.S. 528, 542 (2005) ("[A] regulation that fails to serve any legitimate governmental objective may be so arbitrary or irrational that it runs afoul of the Due Process Clause." ) In other words, there is a due process claim where a "land use action lacks any substantial relation to the public health, safety, or general welfare." *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478 (9th Cir. 2008). Here, Plaintiffs contend that the delay in processing their land use application constitutes a due process violation.

Plaintiffs filed an application to rezone 181.67 acres of their property from Agricultural or Agricultural Transition to Residential R-7 (seven units per acre) on April 17, 2007 pursuant to Ordinance 12 and Resolution 96, one day before Ordinance 153 was enacted. (Defendants' Statement of Facts, Docket No. 17-3, para. 11; Martin Aff. Para 15-16, Docket No. 34-4.) A public hearing was conducted in November 2007 before the Planning and Zoning Commission, and at a meeting in December 2007, the Planning and Zoning Commission recommended denial of Plaintiff's application. The application was set for public hearing before the Board of Commissioners for January 22, 2008. On December 27, 2008, the state court issued its first preliminary order enjoining the processing of applications pursuant to the 2007 amendments. (Response Exh. 1, Docket No. 34-6.) On January 22, 2008, the same date as the scheduled hearing on Plaintiffs' application, Plaintiffs filed a motion to hold the County in contempt for

---

[5] Prior to the *Lingle* decision, the Ninth Circuit had found that challenges to land use regulations on substantive due process grounds were precluded by the Takings Clause. *Armendraiz v. Penman*, 75 F.3d at 1324.

processing their application. Based on this motion, the hearing before the Board of Commissioners on January 22, 2008 did not occur.

The state court issued another order on March 7, 2008, enjoining the County from processing any applications pursuant to Ordinances 12, 150, and 153. (Statement of Facts, Docket No. 17-3 para. 11.) After the 2008 Ordinances were passed, the County sent Plaintiff Martin a letter explaining that he could reapply under the new 2008 Ordinances, as his prior application could not be processed due to the state court orders.

Defendants argue that they are entitled to qualified immunity for the delay in processing Plaintiffs' application because the delay in processing Plaintiffs' application was not a violation of Plaintiffs' constitutional due process rights.

In support of their argument Defendant cites *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478 (9th Cir. 2008). In *North Pacifica*, the Ninth Circuit also dealt with a claim that a delay in processing of a permit application violated the plaintiffs due process right. In that case, the Ninth Circuit held that the numerous delays in processing plaintiff's application due to the need to request additional information, had a justified and reasonable explanation in each instance, and as such, the delays did not violate the plaintiff's due process rights. *Id*. Defendants argue that the instant case is similar, because the delay in processing Plaintiffs' application had a justified and reasonable explanation as it is due to Plaintiffs' own actions in seeking and obtaining court orders enjoining the County from processing Plaintiffs' application. As discussed above, Plaintiffs did seek a permanent and preliminary injunction on December 27, 2007. Further, Plaintiffs did seek to hold Defendants in contempt for attempting to hold a public hearing on his application on January 22, 2008. Finally, the state district court did enter an order enjoining

Defendants from processing any land use applications pursuant to any of the contested Ordinances and the predecessor to the contested Ordinances, Ordinance 12.

In response, Plaintiffs argue that the eight month delay between when he filed the application and the preliminary injunction was still too lengthy for no action to have been taken on the application. The Court disagrees. As evidenced by Mr. Butlin's Affidavit, action was taken initially pursuant to the application with the scheduling of the public hearing by the Planning and Zoning Commission, and any delay in further processing the application is explained by the entry of preliminary injunctions by state court. Therefore, the Court finds that, similar to *North Pacifica*, the County's delay in still not processing Plaintiff's application has a justified and reasonable explanation and no constitutional violation occurred.

Finally, Plaintiffs allege that because the delay was motivated by malice, qualified immunity should not apply. However, bare allegations of malice are not sufficient to defeat a qualified immunity defense where a government official reasonably could believe that his conduct was not illegal but instead rationally related to a legitimate governmental objective. *Harlow v. Fitzgerald*, 457 U.S. 800, 816-818, (1982). Here, even if the County Defendants acted with malice as alleged by Plaintiffs, their action in not processing the application had a justified and reasonable explanation in that Defendants were attempting to follow the state court's order. Additionally, the Court notes that, when the 2008 Ordinances were passed, Plaintiff Martin was sent a letter indicating that he could reapply under the new ordinances and chose not to do so. At that time, delay in processing of Plaintiff's application was attributable to their own inaction. therefore once again consideration of Plaintiff's application was delayed by his own inaction.

After reviewing the record, the Court finds that qualified immunity should be granted with respect to the due process claim relating to the delay in processing Plaintiffs' application.

**ORDER**

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED** that:

1) Defendants' Motion for Summary Judgment on Count II (Docket No. 17) be GRANTED; and

2) Defendants' Motion for Summary Judgment on Counts V and VI (Docket No. 19) be GRANTED.




DATED: September 30, 2009

Honorable Candy W. Dale
Chief United States Magistrate Judge